BOWES, Judge.
A bill of information was filed June 22, 1984, charging defendants John Giambellu-ca and James Robinson each with two counts of simple battery of Charles Holli-day and Ricky Holliday, in violation of La. R.S. 14:35. A bench trial was held on April 30, 1985, during which the district attorney amended the information to dismiss one count as to each defendant. The district court judge found each defendant guilty as charged, and, on June 19, 1985, sentenced each defendant to six months in Parish Prison with the prison term being suspended and each defendant placed on two years active probation subject to special conditions.
Defendants have appealed their convictions and sentences, urging only one assignment of error:
The trial court committed reversible error in finding the defendants guilty as the State failed to prove the elements of the crime of simple battery beyond a reasonable doubt and that the law and evidence were not sufficient in finding the defendants guilty.
Between 12:00 a.m. and 1:30 a.m. on the night of June 7, 1984, Ricky Holliday was working as a doorman for Froggie’s Lounge in Gretna, Louisiana. His brother, Charles Holliday, was standing with him at the lounge’s entrance when Liz Miller left the lounge. According to Ricky’s and Charles’ testimony, the defendants, Robinson and Giambelluca, followed Ms. Miller outside where she and Robinson began arguing. Their arguing continued as the trio walked towards the parking lot, when, suddenly, Robinson slapped Ms. Miller in the face. Because he feared for her safety, Ricky walked over and asked Ms. Miller if she was all right; Giambelluca told him to leave, stating that it was none of his business. Ricky persisted in his attempts to help Ms. Miller, finally stepping between her and Robinson, who then struck him. A scuffle ensued, in which Robinson held Ricky in a headlock and jammed him into a car. Ricky broke free from Robinson, and it was then that he turned and saw that Giambelluca had his brother down on the ground and was punching him. After Ricky pulled Giambelluca off of his brother, the fighting stopped.
The defense presented an entirely different version of events. According to the defendants’ testimony, they had gone to Froggie’s Lounge for drinks with Deborah Scioneaux and a couple of other friends, when Giambelluca noticed a man watching them, whom he identified at trial as Hosen-thal. Because the man made him nervous, Giambelluca suggested they leave. Robinson, who was tense because his ex-girlfriend, Liz Miller, was there, agreed to leave, so the two got up and left. (Robinson testified that he and Liz Miller had been dating, off and on, at the time of this incident and they were still dating as of the time of trial.)
Robinson stated that when he didn’t speak with her before he left, Liz became angry and rushed outside after him. She was yelling, waving her arms at him, and was so visibly upset that Giambelluca suggested that she calm down and he would walk her to her car. He suggested that she could meet them for a drink where they were going, if she wanted to. At this point Ricky approached them, saying he had come for Liz, and for them to get away. Giambelluca told him everything was under control, turned with his arm around Ms. Miller, and began walking her to her car when, suddenly, Charles grabbed him, swung him around, hit him, and the fight ensued.
Robinson testified that when he saw Ricky Holliday move towards the fight, he thought Ricky intended to jump on Giam-belluca too, so he moved forward to help. Instead, Ricky swung and struck Robinson, knocking him into the trunk of a car. Robinson claimed that he didn’t remember ever hitting Ricky back.
Liz Miller, who was called as a defense witness, confirmed that she had followed the defendants outside the lounge, and that she had then begun arguing with Robinson. Ms. Miller also testified that she didn’t know what happened between James Rob *490 inson and Ricky Holliday but that, as Giam-belluca was escorting her to her car, Charles approached and he and Giambellu-ca got into an argument. Ms. Miller specifically denied seeing who threw the first punch in this scuffle, or who threw the first punch in the subsequent scuffle which ensued between Robinson and Ricky Holli-day.
The defense’s argument focuses on the discrepancies in testimony between the Holliday brothers and the defense witnesses in regard to the events which immediately precipitated the fighting, resulting in the simple battery charges against defendants. Counsel concludes that the court should resolve these discrepancies in defendants’ favor after application of the reasonable doubt standard to the evidence.
After hearing all the evidence, the trial judge gave the following reasons for finding defendants guilty as charged:
THE COURT:
Okay, for the record, the Court has listened to the evidence in this case very attentively, and the Court is of the opinion that the defendants are guilty as charged with regard to the simple battery charge. Both of them, as amended by the State. Of course, in criminal matters such as this the trier of facts is not required to give any reason for his judgment. But I would like to fortuitously state what I believe. I believe that the evidence showed that the motivation of the witnesses on the part of the defense was, as the State contends, that the person who should know more than anybody else, Liz Miller, testified that she didn’t know who had the first punch. That made me believe that she was [sic], as the State contends, didn’t want to see anybody in trouble. Further, she testified that she told — or they testified that Liz Miller told them, “Nothing’s going to come of this,” that she tried to prevail upon them not to make any charges, that it wouldn’t have any problems. But they went ahead at the advice of counsel to make the charges — not the night of the incident but the next day, I suppose. It was sometime after that night. And I believe that Liz Miller’s attempt to reconcile the situation, which turned out bad, was unsuccessful. I think that there is no motivation that was shown by the Holliday brothers for them to go in and start a fight with Robinson or Giambellu-ca. What I believe was, as testified by the young lady that was put on to testify as, the defense says, for the sole purpose of saying who went out first, I think her testimony was even more important when she testified that Liz Miller was harrassing Mr. Robinson, and that Mr. Robinson and Mr. Giambelluca decided to leave that place in order to avoid any further harrassment. If that be the case, when Liz Miller went outside, whether it was before or after it really is immaterial insofar as innocence or guilt, Mr. Robinson did have a conversation with Liz Miller. And, according to the testimony of Mr. Giambelluca, he put his hands forward as if to keep her away. That’s essentially what Ricky Holliday said, that he wanted to go in and make sure that there wasn’t any problem. He testified that Liz Miller was his friend, he had known her a long time, and he tried to make sure that she wasn’t in any way injured. That’s what I believe happened. That’s what testimony, I believe, is more credible than the testimony that I heard from the other witnesses. Mr. Charles Holliday said that he was watching to see what would happen with John when Mr. John Giambelluca came up from his right hand side and hit him. And he said he either slapped him or clawed him or punched him, he doesn’t know which. But he said he got hit on the right side of his face, and that’s what he said was the first punch. Otherwise, I don’t see why Mr. Giambelluca got in a fight. I really don’t understand that, why Charles would have hit him, when the whole focus of everything was on James Robinson and Liz Miller. I don’t understand. There’s no motivation for Charles to hit Mr. Giambelluca. Anyway, the Court finds that the defendants are guilty of the misdemeanor charge of simple bat *491 tery as charged. Okay, and, now, what kind of bond do you have? I’m going to order a pre-sentence investigation.
It is obvious, from the trial judge’s reasons, that he placed more credibility on the testimony of the two victims than he did on the testimony of the defendants. Since the only other person who was outside at the time of the scuffle, Elizabeth Miller, could shed no light on who were the aggressors, the case turned on the factual findings and conclusions reached by the trial judge.
In reviewing the correctness of the trial judge’s decision to convict, this court must review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince the reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Camp, 446 So.2d 1207 (La.1984).
The function of a reviewing court on appeal is not to reassess the credibility determinations of the fact finder but only to determine if the evidence offered was sufficient to support the conclusion as required by the Jackson standard. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Smith, 463 So.2d 16 (La.App. 5th Cir.1985).
Such factual conclusions will not be disturbed unless they are not supported in the evidence. State v. Vessell, 450 So.2d 938 (La.1984); State v. Gultry, 471 So.2d 804 (La.App. 5th Cir.1985). Our review of the record convinces us that the evidence supports the defendants’ conviction for simple battery.
Accordingly, the defendants’ convictions and sentences are affirmed.
AFFIRMED.